FILED

MAY 1 5 2020

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MARK WILLIAMSON, | § | FILED UNDER SEAL PURSUANT TO 31 U.S.C § 3729, et seq. |
| Relator, | § | |
| v. | § | No. 1:20CV0530 LY |
| MUNIZ CONCRETE & CONTRACTING, INC., AUSTIN CONSTRUCTORS, LLC, and JOSE JUAN MUNIZ, | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

**RELATOR'S ORIGINAL COMPLAINT**

Relator Mark Williamson, on behalf of the United States of America, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729-3733, files this Complaint against Defendants, Muniz Concrete & Contracting, Inc., Austin Constructors, LLC, and Jose Juan Muniz. This Complaint is premised on Defendants' scheme to defraud the United States Government by obscuring the true ownership of a construction company for the purpose of engaging in collusive activity and price fixing for federally funded construction contracts and falsely certifying themselves as a disadvantaged business enterprise, minority-owned business enterprise, and/or woman-owned business enterprise. In support thereof, Relator alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, 31 U.S.C. § 3729, *et seq.*, and 31 U.S.C. § 3730(b).

2. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b) and (c) and 31 U.S.C. § 3732(a).

3. This case is based on the knowledge of Relator Mark Williamson, an "original source" as those terms are defined in 31 U.S.C. § 3730.

4. This Complaint has been filed under seal and shall remain under seal for at least sixty (6) days and until the Court so orders.

5. A copy of this Complaint has been served on the United States Attorney General and the United States Attorney for the Western District of Texas.

6. All conditions precedent required by 31 U.S.C. § 3730 have occurred.

**PARTIES**

7. Plaintiff, the United States of America, brings this action on behalf of the United States Department of Transportation.

8. Relator Mark Williamson ("Relator") is a resident of the State of Texas.

9. Defendant Muniz Concrete & Contracting, Inc., ("Muniz Concrete") is a Texas corporation with its principal place of business located at 3523 Gonzales Street, Austin, Texas 78702. Muniz Concrete's registered agent for service is Jose Juan Muniz, also located at 3523 Gonzales Street, Austin, Texas 78702.

10. Defendant Austin Constructors, LLC, ("Austin Constructors") is a Texas company with its principal place of business located at 7907 FM 973 Austin, Texas 78719. Austin Constructor's registered agent for service is Jeannette Muniz, also located at 7907 FM 973 Austin, Texas 78719.

11. Defendant Jose Juan Muniz ("Muniz") is a resident of Texas and is the owner and director of Muniz Concrete. He may be served with process at Muniz Concrete's principal place of business at 3523 Gonzales Street, Austin, Texas 78702.

## THE LAW

12. Generally, the False Claim Act, 31 U.S.C. §§ 3729-3733, (the "FCA") prohibits any person from (1) knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval to the Government; (2) knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim; (3) conspiring with others to commit a violation of the FCA; and (4) knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money to the Government.

13. The FCA allows any person having knowledge of a false or fraudulent claim against the Government to bring an action in Federal District Court on behalf of the United States Government. *See* 31 U.S.C. § 3730(b)(1). The objective of Congress in passing the FCA "was broadly to protect the funds and property of the Government from fraudulent claims, regardless of the particular form or function of the government instrumentality upon which such claims were made." *Rainwater v. United States*, 356 U.S. 590, 592 (1958).

## CONTRACTS WITH MUNICIPALITIES

14. Texas Local Government Code § 252.021(a) allows for competitive bidding processes before a Texas municipality may enter into a contract that requires an expenditure of more than $50,000 from one or more municipal funds. Section 252.043(a) provides that, "[i]f the competitive sealed bidding requirement applies to the contract for goods or services, the contract must be awarded to the lowest responsible bidder or to the bidder who provides goods or services at the best value for the municipality."

15. Section 252.043(a) provides,

> [i]n determining the best value for the municipality, the municipality may consider: (1) the purchase price; (2) the reputation of the bidder and of the bidder's goods or services; (3) the quality of the bidder's goods or services; (4) the extent to which the goods or services meet the municipality's needs; (5) the

> bidder's past relationship with the municipality; (6) the impact on the ability of the municipality to comply with laws and rules relating to contracting with historically underutilized businesses and nonprofit organizations employing persons with disabilities; (7) the total long-term cost to the municipality to acquire the bidder's goods or services; and (8) any relevant criteria specifically listed in the request for bids or proposals.

Texas Local Government Code § 252.043(a).

16. Generally, the contract must be awarded to the lowest responsible bidder if the competitive sealed bidding requirement applies to the contract for construction of projects associated with civil engineering, including highways, roads, streets, bridges, and utilities. *See* Texas Local Government Code § 252.043(d). In determining who is a responsible bidder, the municipality may take into account the safety record of the bidder. Texas Local Government Code § 252.0435.

17. For the City of Austin, open solicitations are posted on the city's Vendor Connection website. Generally, the City of Austin uses an Invitation for Bids ("IFB") solicitation "for requirements anticipated to cost more than $50,000, normally for construction projects or commodity purchases. Award is made to the lowest priced, responsive, and responsible vendor."[1] A complete set of all required bid documents to be submitted by bidding vendors are to be included in the attachments section of each solicitation.

18. Included in these bid documents is the Bidder's Affidavit of Non-Collusion which all vendors bidding on a city contract must execute. In doing so, the bidder must swear and affirm that the bidder "has not and will not in any way directly or indirectly … colluded, conspired, or agreed with any other person, firm, corporation, bidder or potential bidder to the

[1] *Understanding City of Austin Procurement Process, A Minority Perspective*, ACTA-AUSTIN.COM, http://www.acta-austin.com/doc/Understanding%20City%20of%20Austin%20Procurement%20Process.pdf (last visited April 28, 2020).

amount of this bid or the terms or conditions of this bid."[2] The bidder must also swear and affirm it has not "paid or agreed to pay any other person, firm, corporation bidder or potential bidder any money or anything of value in return for assistance in procuring or attempting to procure a contract or in return for establishing the prices in the attached bid or the bid of any other bidder." Additionally, the bidder swears and affirms that it "is not presently aware of any potential or actual conflicts of interest regarding this solicitation, which either enabled Bidder to obtain an advantage over other bidders or would prevent Bidder from advancing the best interests of [the City of Austin] in the course of the performance of the Contract."

19. "Unless otherwise notified, Bidders must attend a Pre-Bid Conference to ensure their understanding of . . . bidding and contracting requirements, particularly MBE/WBE Procurement Program requirements."[3] Each submitted bid "must be completed and signed by person(s) authorized to bind [the Bidder or Bidder's business] submitting the Bid. Bids for construction projects involving federal funds must also include a federal-aid assurance (Section 00810A). Furthermore, the bid must be accompanied by a MBE/WBE or DBE Compliance Plan, which is submitted in a second envelope, separate and apart from the bid.

20. Bids and any accompanying documents are then sealed and submitted to the Capital Contracting Office in advance of the deadline set forth in the IFB and then publicly opened and read aloud in the Congress Conference Room. Typically, "[a]ward of Contract will be to the lowest, responsible Bidder meeting all requirements of the Bid Documents."[4] However, in some instances the Capital Contracting Officer must submit its "recommendation for award to

[2] *Bidder's Affidavit of Non-Collusion, Non-Conflict of Interest and Anti-Lobbying*, AUSTINTEXAS.GOV, https://www.austintexas.gov/sites/default/files/files/Contract_Management/Construction_Bid_Docs/00440_rev_07-11-18.pdf (last visited April 28, 2020).
[3] *Bidding Requirements, Contract Forms and Condition of the Contract*, AUSTINTEXAS.GOV, http://www.austintexas.gov/sites/default/files/files/00100_rev_08.12.19.pdf (last visited April 28, 2020).
[4] *Id.*

the City Council for those project awards requiring City Council action." After the award is made and Bidder submits required documentation, the contract is then signed by City Manager or his/her designee."[5] Bids must be rejected if "[m]ore than one Bid for same Work from an individual, firm, partnership, or corporation" is received, if there is "[e]vidence of collusion among Bidders," or for various other reasons.[6]

## MINORITY-OWNED, WOMEN-OWNED, AND DISADVANTAGED BUSINESS ENTERPRISE PROCUREMENT PROGRAMS

21. The Texas Department of Transportation's ("TxDOT") Disadvantaged Business Enterprise ("DBE") Program was created to provide a level playing field for small, minority- and women-owned businesses wanting to do business with TxDOT and other agencies receiving federal funds from the U.S. Department of Transportation ("DOT"). The Texas Unified Certification Program certifies DBEs for participation in DOT contracting projects across the State of Texas.

22. The City of Austin's Small & Minority Business Resources Department ("SMBR") administers the city's minority-owned business enterprise ("MBE") and women-owned business enterprises ("WBE") procurement programs. Austin, Tex., Rev. Ordinances ch. 2-9A, art. II, § 2-9A-10. "The MBE/WBE program encourages minorities and women participation on City contracts by establishing special procurement goals on City contracts above the City Manager's spending authority."[7] "SMBR is responsible for the implementation of the certification process for the City of Austin and for ensuring that only firms that meet the eligibility criteria are certified as MBEs or WBEs in compliance with City of Austin Code of

---

[5] *Id.*
[6] *Id.*
[7] *About Small & Minority Business Resources*, AUSTINTEXAS.GOV, http://austintexas.gov/department/small-and-minority-business/about (last visited Mar. 23, 2020).

Ordinances."[8] "The Certification Division verifies that the minority and/or woman business applicant owns, manages, and controls the day-to-day operations of the for-profit business in compliance with the MBE/WBE Procurement Program Ordinance, Chapter(s) 2-9 (A)(B)(C) and (D) of the City Code."[9] To be eligible as an MBE or WBE, the following requirements must be met:

a. At least 51% of the company must be owned, managed, and controlled by a socially and economically disadvantaged individual from one of the presumed groups (i.e. Asian-American, African-American, Native American, Hispanic or Women);
b. The company must qualify as a small business as defined by the U.S. Small Business Administration;
c. The Personal Net Worth of ownership must not exceed $1,565,000;
d. The company must have a facility located within the State of Texas for at least 90 days; and
e. The company must be a for-profit business.

Austin, Tex., Rev. Ordinances ch. 2-9A, art. I, § 2-9A-4 (31) & (47).

23. Providing false or misleading information to the City of Austin in connection with an application for certification or recertification as an MBE or WBE is unlawful and may result in sanctions including suspension from future City of Austin solicitations. Austin, Tex., Rev. Ordinances ch. 2-9A, art. III, § 2-9A-25(A) & (B).

24. The SMBR is also responsible for certifying disadvantaged business enterprises ("DBEs").[10] The DBE Unified Certification Program is established by the State of Texas in accordance with 49 C.F.R. §§ 23 & 26. *See* Texas Unified Certification Program Standard Operating Procedures, U.S. Department of Transportation Partners, p. 1. The Texas Department of Transportation and the City of Austin are some of the certifying partners for the program. *See*

---

[8] *Id.*
[9] *Certification Overview*, AUSTINTEXAS.GOV, http://austintexas.gov/department/certification-overview (last visited Mar. 23, 2020).
[10] *Disadvantaged Business Enterprise*, AUSTINTEXAS.GOV, http://austintexas.gov/department/disadvantaged-business-enterprise (last visited Mar. 23, 2020).

*id.* DBEs are qualified for participation in federally-funded Department of Transportation airport, highway, and public transit contracting projects across the State of Texas. To be eligible as a DBE, the following requirements must be met:

a. At least 51% of the company must be owned, managed, and controlled by an economically and socially disadvantaged individual from one of the presumed groups (i.e., Asian-American, African-American, Native American, Hispanic or Women);
b. The company must qualify as a small business as defined by the U.S. Small Business Administration;
c. The Personal Net Worth of ownership must not exceed $1,320,000; and
d. The company must be organized as a for-profit business.

Austin, Tex., Rev. Ordinances ch. 2-9A, art. I, § 2-9A-4 (19) (citing 49 C.F.R. § 26).

25. Certification as a DBE, MBE, and WBE is valid for three years from the initial date of certification.[11] However, the certification must be updated annually by completing a sworn affidavit. For the DBE affidavit, the affiant must swear that "there have been no changes in [business name]'s circumstances affecting its ability to meet the size, disadvantaged status, ownership, or control requirements off 49 CFR Part 26 and 13 CFR Part 121."

26. The Compliance Division "reviews solicitations, sets project goals, collaborates with Project Managers to help identify scopes of work on projects, and verifies Compliance Plan information submitted by Bidders/Proposers."[12] After a bidder is awarded a contract, the Compliance Division "continues to monitor and assess compliance by conducting site audits, reviewing payment requests, facilitating performance/payment issues, and determining final compliance with the program."[13]

[11] *Disadvantaged Business Enterprise/Airport Concessions (DBE/ACDBE)*, TXDOT.GOV, https://www.txdot.gov/business/partnerships/dbe.html (last visited April 28, 2020).
[12] *Contract Compliance*, AUSTINTEXAS.GOV, http://austintexas.gov/department/contract-compliance (last visited Mar. 23, 2020).
[13] *Id.*

## FACTUAL BACKGROUND

***Collusive Bidding between Two Companies Owned by Defendant Muniz***

27. Relator is the president and owner of a general contracting company based in Pflugerville, Texas, specializing in excavation, paving, concrete, and other services for both the private and public sectors. For over twenty (20) years, Relator has serviced a broad array of clients, including private companies, cities, counties, school districts, and colleges and universities in Texas as well as other states.

28. As a general contractor, Relator has had the opportunity to attend pre-bid meetings in which representatives from Muniz Concrete and Austin Constructors were also in attendance, communicate directly with Defendants and their employees, and bid against Defendants for work. Representatives for Muniz Concrete and Austin Constructors signed into pre-bid meetings on behalf of their respective companies.

29. In 2015, it was common knowledge among the local construction community that Muniz Concrete was owned and operated by Jose Juan Muniz. However, the ownership of Austin Constructors, an entity that frequently bid alongside Muniz Concrete, was less clear. Relator first became suspicious of the purported ownership of Austin Constructors in 2015 after a bid opening for a pedestrian trail project in the City of Sunset Valley. Relator's suspicions led him to investigate both companies. Relator determined:

a. In 1993, Defendant Muniz married Augustina Hernandez.
b. In 1997, Muniz Concrete's principal place of business was at 720 Bastrop Highway, Suite 302, Austin, Texas.

c. In 2008, Austin Constructors was formed by Alejandrina Quintero and Ivan Muniz. Upon information and belief, Ivan Muniz is Defendant Muniz' son and Quintero is a relative.

d. In 2009, the sole Member for Austin Constructors was identified as the Muniz Family Trust, with an address of 720 Bastrop Highway, Suite 304, Austin, Texas.

e. In 2010, Austin Constructors' Registered Agent was changed to Augustina Muniz, who signed the state documents as the "Member/Owner" of Austin Constructors.

f. 2010-2013 Public Information Reports ("PIRs") for Austin Constructors identify Members as Augustina Muniz, Ivan Muniz, and the Muniz Family Trust.[14]

30. Armed with evidence establishing that, at the very least, the companies were owned by members of the same household and nuclear family, Relator submitted a written protest for the trail project to the City of Sunset Valley on July 15, 2015. Relator's written protest detailed his research showing that the ownership and management of Muniz Concrete and Austin Constructors were closely intertwined.

31. The trail project was subsequently pulled from the City of Sunset Valley's 2015 budget. When the trail project was rebid in or around April 2016, Muniz Concrete was awarded the project despite being the third low bid.

32. Between 2015 and 2019, Relator primarily focused on bidding projects in Williamson County, San Marcus, Seguin, Georgetown, Leander, and Lockhart, Texas – locales

[14] A City of Austin database now identifies "Jenny Rodriguez" as the owner of Austin Constructors. Upon information and belief, "Jenny Rodriguez" is Jeannette Rodriguez, f/k/a Muniz, Defendant Muniz' daughter.

in which Muniz Concrete and Austin Constructors did not typically conduct business. In 2019, the City of Bastrop began accepting bids for its Downtown Main Street sidewalks and roadway improvements project. Relator submitted a bid on this contract on behalf of his company in or around October 2019. Although Muniz Concrete and Austin Constructors both attended the pre-bid meeting for this project, only Muniz Concrete submitted a bid for this project.

33. At the time, Relator already suspected that both Muniz Concrete and Austin Constructors were owned and managed by Defendant Muniz due to his experience with the 2015 Sunset Valley project. Accordingly, Relator submitted an open records request to the City of Bastrop to determine which companies Muniz Concrete listed as its subcontractors for the 2019 Bastrop project and whether Muniz Concrete received additional information from the project engineer that was not shared with other bidders. The City of Bastrop responded by requesting that Relator pay charges associated with preparing documents responsive to his request. When Relator requested a cost breakdown for the responsive document production, he received no further correspondence from the City of Bastrop. Upon information and belief, this project was awarded to Muniz Concrete.

34. After these incidents, Relator continued to investigate the relationship between Muniz Concrete and Austin Constructors, which included speaking directly with an Austin Constructors employee (now a former employee), and reviewing previous contracts the companies had bid on.

35. First, Austin Constructors' principal place of business is located at 7907 FM 973 Austin, Texas 78719. Jose Muniz acquired this property in 2010, and has since transferred it into two different LLCs, which he controls. In or around November 2019, Relator visited this

property and discovered that this land is used to house equipment, vehicles, and other property of both Austin Constructors and Muniz Concrete.

36. Relator has had personal conversations with a (now former) project manager for Austin Constructors, an individual Relator has known for over thirty (30) years. Relator's suspicion that Austin Constructors is owned, operated, and controlled not by Jeanette Muniz or Ivan Muniz, but Defendant Jose Muniz, was confirmed by this individual. Additionally, Relator's source has admitted:

a. Jeanette Muniz does not run Austin Constructors and she does nothing more than attend pre-bid meetings as a "front" for the company.[15]

b. That despite signing in for Austin Constructors at pre-bid meetings and holding himself out to the City of Austin as an employee of Austin Constructors, that he actually worked for Defendant Muniz, and not Austin Constructors. This employee's paychecks were drawn on a Muniz Concrete account.

c. That Austin Constructors is a "shell" company whose employees switch back and forth between Austin Constructors and Muniz Concrete.[16]

d. That Defendant Muniz has "wined and dined" City of Austin employees for the purpose of securing preferential treatment, specifically Diane Rice and

[15] Despite representing to the City of Austin that she owns/operates Austin Constructors and that it is certified as a WBE, documents from a lawsuit involving Austin Constructors indicate that Ivan Muniz held himself out to be the owner/operator as recently as January, 2018. *See Underground Safety Equipment, LLC v. Austin Constructors, LLC*, No. C-1-CV-19-005679 (Travis Co. Court at Law No. 1, 2019).

[16] Since at least 2008, Austin Constructors has been paid just $1,500 by the City of Austin for maintenance work. By comparison, Muniz Concrete has received at least $97,989,259.34. *See Data Drilldown for Austin Constructors, LLC*, AUSTIN FINANCE ONLINE, https://www.austintexas.gov/financeonline/checkbook/vendor/check_detail.cfm?yr=0&mth=0&vcc=VS0000017696&ln=AUSTIN%20CONSTRUCTORS%20LLC&oc=6383&on=Maintenance%2Dbuildings (last visited April 28, 2020).

Monica Lopez, and that they "do a little extra" for Defendant Muniz' businesses.

e. Muniz Concrete uses Austin Constructors on its bid as a subcontractor for the purpose of satisfying minority/women participation requirements.

37. Further, competing bids submitted by Muniz Concrete and Austin Constructors have contained identical line items, suggesting that the companies collude to ensure that either one or the other is awarded the contract. For example, the City of Austin opened invitation number CLMC515 for bids on January 22, 2015. This project involved federal funds for ADA sidewalk and ramp improvements. Both Muniz Concrete and Austin Constructors submitted bids on this project. Muniz Concrete had the lowest bid at approximately $3.6 million, while Austin Constructors bid was approximately $3.7 million. Interestingly, Muniz Concrete and Austin Constructs had twenty-eight (28) identical line items on the project's certified bid tab.

38. Upon information and belief, Muniz Concrete and Austin Constructors also submit competing bids on projects, only for one business to withdraw its bid when it becomes apparent that one of Defendant Muniz' businesses has submitted the low bid. In July of 2018, the City of Austin opened bidding for invitation number CLMC721, a federally funded project for improvements to ADA sidewalks and ramps. Monica Lopez was the bid certification and contract representative for the City of Austin on this project and Diane Rice was the project manager. Representatives of both Muniz Concrete and Austin Constructors attended the mandatory pre-bid meeting on June 19, 2018. Initially, the project's pencil bid tab indicated that Austin Constructors was the low bid for this project. However, the certified bid tab for this project indicates that Austin Constructors subsequently withdrew its bid. As a result, Muniz Concrete was the low bid and was awarded the contract.

***Preferential Treatment of Muniz Concrete and Austin Constructors***

39. In 2012, the City of Austin opened invitation number CLMC379 for bids. This project involved federal funds for local area traffic and intersection improvements. Monica Lopez was the bid certification and contract representative for this project. The pre-bid meeting for this project was held on June 25, 2012, and Muniz Concrete and Austin Constructors were the only prime contractors that signed the pre-bid attendance sheet. The following day, the City of Austin issued an addendum on the project that retroactively made the pre-bid meeting mandatory. Typically, City of Austin pre-bid attendance sheets are labeled as mandatory in type-face font. Interestingly, the "mandatory" designation on the pre-bid attendance sheet for CLMC379 was handwritten. By retroactively changing the pre-bid attendance to mandatory, the City of Austin effectively precluded any other prime contractors from bidding the project.

40. In 2016, both Muniz Concrete and Austin Constructors were fined over $121,000 by the Occupational Safety and Health Administration ("OSHA") for exposing workers to trenching hazards related to work awarded to Muniz Concrete by the City of Austin for invitation number CLMC532A.[17] Monica Lopez was the City of Austin's bid certification and contract representative for this project.[18] During the solicitation period, the City of Austin placed an estimated amount for the work completed under this contract at $5,826,395. Muniz Concrete was awarded the contract with a bid of approximately $5.7 million. Interestingly, Muniz Concrete's bid increased by nearly $1 million from when the project was initially bid under CLMC532. Although a representative of Austin Constructors attended the pre-mid meeting for this project, Austin Constructors did not submit a bid on the project. Instead, Muniz Concrete utilized Austin

[17] This project was initially bid as CLCM532. Muniz was the lowest bid at approximately $4.9 million.
[18] CLMC532A was not a federally funded project.

Constructors as a subcontractor. Austin Constructors was responsible for over $113,000 of the total amount of fines assessed by OSHA for violations on this project.

41. When OSHA fined Muniz Concrete and Austin Constructors in 2016, contractors were required to disclose any administrative merits determination, arbitral award or decision, or civil judgment rendered against it within the preceding three (3) years with respect to various covered labor laws pursuant to the Fair Pay Executive Order. If a contractor had even one violation, a contracting office could have denied the contractor the award as part of the responsibility determination. Despite these violations and fines, neither Muniz Concrete nor Austin Constructors were removed from the project. In fact, the City of Austin awarded Muniz Concrete an additional $358,634.53 pursuant to a March 2, 2017 change order bringing the total value of the contract to $6,478,732.56. Furthermore, the City of Austin continued to award Muniz Concrete and Austin Constructors new projects after the 2016 OSHA violation and fines.

42. In May of 2019, the City of Austin opened bidding for invitation number CLMC725A.[19] Muniz Concrete submitted a bid of $507,531. Two (2) lower bids were submitted by HSU Equity, Inc. and DeNucci Constructors, LLC at $326,880 and $453,000, respectively. However the City of Austin rejected the two lower bids as "non-responsive," and Muniz Concrete was awarded the contract.

43. In August of 2019, the City of Austin opened bidding for invitation number CLMC751, a federally funded local mobility ADA sidewalk and ramp improvements project. Diane Rice was the project manager for this contract. Both Muniz Concrete and Austin Constructors bid on this project but neither were the low bidder. In October of 2019, the City of

[19] Generally, the "A" indication at the end of the CLMC number indicates that the solicitation is a rebid; however, no records on the Austintexas.gov website exist for invitation number CLMC725.

Austin rejected all bids for CLMC751 and stated that the scope of work for the project may be clarified and re-bid in the future.

44. This project was re-bid in February of 2020 under invitation number CLMC751A. Diane Rice was still the project manager for the contract. When the project was re-bid, Austin Constructors was the low bid and was subsequently awarded the contract. Interestingly, the certified bid tab for CLMC751A was only a single page in length and included no line-item cost entries. Traditionally, certified bid tabs for City of Austin projects are several pages in length and include line-item estimates for all components comprising the total bid amount.

45. Additionally, other transportation agencies in the Austin metropolitan area also appear to favor Muniz' businesses. In or around April 2019, Muniz Concrete was awarded a federally funded contract for solicitation number 304757 by Capital Area Metropolitan Transportation Authority ("Cap Metro") for the fabrication and installation of bus stop furniture.[20] The Cap Metro bid tab specified that the contract would be awarded to the lowest responsive bidder for Options 1 and 2. Muniz Concrete provided a bid of $3,115,085 each for Options 1 and 2 while Spaw Glass, another contractor, provided a bid of $2,542,430.75 and $2,566,590.30 for Options 1 and 2, respectively. Despite submitting a lower bid, Spaw Glass' bid was rejected as "non-responsive," and Muniz Concrete was awarded the contract. Although Muniz Concrete was only entitled to $2,964,979.00 plus a 25% contingency for this contract, the company subsequently received an additional contingency of $147,750.00 for any remaining unforeseen issues.

[20] Capital Area Metropolitan Transportation Authority awards contracts to the most responsive and responsible bidder offering the lowest price. *See* Cap Metro Vendor's Guide, https://capmetro.org/vendors/#! (last visited April 10, 2020).

***Muniz' Improper Certification as a DBE***

46. Upon information and belief, Defendant Muniz' net wealth exceeds the threshold for Muniz Concrete to be awarded City of Austin contracts on the basis of its status as a DBE or MBE. The Personal Net Worth of ownership for a DBE must not exceed $1,320,000, while the Personal Net Worth of ownership for a MBE must not exceed $1,565,000.

47. Since 2008, the City of Austin *alone* has awarded Muniz Concrete numerous construction contracts valued over $98 million,[21] portions of which were federally funded.[22] Muniz Concrete employs approximately 200 employees and also generates revenue through construction work performed in other locales such as Bastrop, Sun Valley, Round Rock, and Pflugerville, Texas.

48. Defendant Muniz owns properties at (1) 9306 Guerrero Lane, Austin, Texas 78747; (2) 1410 E M Franklin Avenue, Austin, Texas 78721; and (3) 309 Rio Grande Street, Taylor, Texas 76574.

49. Defendant Muniz and Augustina Muniz jointly own properties on Elroy Road in Del Valle, Texas and 2446 Arbor Drive, Round Rock, Texas 78681.

50. Defendant Muniz has created several LLCs in addition to Muniz Concrete. Defendant Muniz has created and transferred properties into Real 14 Holdings, LLC, San Luis Holdings, LLC, Traque Corporation, Trebol Holdings, LLC, JJ Well Services, LLC, San Jose Holdings, LLC, Los Filtros, LLC, and Camila's Holdings, LLC.

---

[21] *Data Drill Down for Muniz Concrete & Contracting, Inc.*, AUSTIN FINANCE ONLINE, https://www.austintexas.gov/financeonline/checkbook/vendor/check_detail.cfm?yr=0&mth=0&vcc=MUN7143465&ln=MUNIZ%20CONCRETE%20%26%20CONTRACTING%20INC&oc=5560&on=Services%2Dconstruction%20contr (last visited April 9, 2020).

[22] Submission of a complete federal-aid assurance (Section 00810A ) along with the City of Austin's contract documents indicates that a contractor is bidding on a federally funded construction protect.

51. Trebol Holdings, LLC owns 100% of the property located at 3609 Bratton Heights Drive, Austin, Texas 78729. The Bratton Heights property was assessed at $272,600 in 2019. Trebol Holdings, LLC also owns properties located at: 500 Tillery Street, Austin, Texas 78702; 1100 Tillery Street, Austin, Texas 78702; and 1103 ½ Brass Street, Austin, Texas 78702, that have a combined appraised value of approximately $1.56 million.

52. San Luis Holdings, LLC owns 100% of the property located at 3523 Gonzales Street, Austin, Texas 78702. The Gonzales Street property was assessed at $1,585,724 in 2019. The Bratton Heights and Gonzales Street properties are operating locations for Muniz Concrete.

53. Real 14 Holdings, LLC owns properties located at: 3505 Lyons Road, Austin, Texas 78702; 205 Wheeler Street, Austin, Texas 78705; 7711 Lonesome Lane, Del Valle, Texas 78617; and two properties located on Elroy Road in Austin, Texas 78617,[23] that have a combined appraised value of approximately $542,969.

54. San Jose Holdings, LLC owns property at 7907 S FM 1973, Austin, Texas 78719, with a value of $261,900.

55. Camila's Holdings LLC owns six properties on Wheless Lane in Austin, with a combined value of $640,000.

56. Los Filtros LLC owns three properties on Creswell Drive in San Antonio, with a combined value of $174,700.

57. All properties were, at one point, in Defendant Muniz' name, prior to being transferred into an LLC. Upon information and belief, Muniz has attempted to obscure his ownership of a significant number of assets, and thus his ineligibility to receive work on account of his "economic disadvantage," by transferring them into various LLCs.

[23] Described as: ABS 797 SUR 5 WESTBROOK T B ACR 9.792 and LOT 2-A RESUB OF LT 2 HODGKINS ADDN.

***Austin Constructors' Improper Certification as a WBE/MBE***

58. Upon information and belief, Austin Constructors is owned solely by Ivan Muniz, Defendant Muniz' son. Therefore, Austin Constructors is improperly certified as a WBE because the company's ownership is not comprised of at least 51% women. At the time of Austin Constructors' incorporation in June 2008, the company's only managers were Alejandrina Quintero and Ivan Muniz.

59. All of Austin Constructors' public filings after its incorporation date indicate either that Ivan Muniz is the company's sole owner, or that the company does not have 51% women ownership. For example, Austin Constructors' 2012 PIR indicates that the company had three officers, directors, or members: Augustina H. Muniz, Ivan Muniz, and the Muniz Family Trust. Ivan Muniz certified that he was the owner of Austin Constructors in his notarized 2015 Petition for Occupational Driver's License. Additionally, Austin Constructors' 2018 Texas Franchise Tax PIR indicates the company had *only one* officer, director, member, general partner or manager: Ivan Muniz. Ivan Muniz also signed the company's 2018 PIR in his capacity as Austin Constructor's President.

60. Additionally, in a 2019 lawsuit filed against Austin Constructors, Ivan Muniz identified himself as the company's sole President/Owner in an application for an account.[24] The only female representative of Austin Constructors listed in the application for account from the 2019 lawsuit was Jeannette Muniz, the company's accounts receivable contact and Defendant Muniz' daughter. Jeannette Muniz, also known as Jeanette "Jenny" Rodriguez, was also listed as Austin Constructors' registered agent as of June 8, 2018; however, no publicly filed entity

[24] *See Underground Safety Equipment, LLC v. Austin Constructors, LLC*, No. C-1-CV-19-005679 (Travis Co. Court at Law No. 1, 2019).

documents for Austin Constructors indicate Jeannette has an ownership interest in the company.[25]

61. Upon information and belief, Jeannette Rodriguez regularly attends City of Austin pre-bid meetings and signs the meeting attendance as Austin Constructors' representative to create the appearance that the company is a WBE.

## COUNTS AGAINST DEFENDANTS

### COUNT I
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A) - Presentation of False Claims

62. Relator incorporates by reference all paragraphs of this Complaint set out above as if fully set forth herein.

63. Defendants knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval to the United States Government.

64. Said claims were presented with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether they were false.

65. By virtue of the false or fraudulent claims made by Defendants, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act of an amount to be determined at trial, plus a civil penalty of $5,500.00 to $11,000.00, as adjusted for inflation for each violation.

### COUNT II
### False Claims Act, 31 U.S.C. § 3729 (a)(1)(B) - Use of False Statements

66. Relator incorporates by reference all paragraphs of this Complaint set out above as if fully set forth herein.

---

[25] However, Austin Constructors' vendor certification on the Texas Department of Transportation's website indicates that Jeannette Rodriguez is the business' owner.

67. Defendants made, used, or caused to be made or used, false records or statements to get a false or fraudulent claim paid or approved by the United States Government. Said false records or statements were made with actual knowledge of their falsity or with reckless disregard or deliberate ignorance of whether or not they were false.

68. By virtue of the false or fraudulent claims made by Defendants, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act of an amount to be determined at trail, plus a civil penalty of $5,500.00 to $11,000.00, as adjusted for inflation for each violation.

**COUNT III**
**False Claims Act, 31 U.S.C. § 3729 (a)(1)(C) – Conspiracy to Violate the FCA**

69. Relator incorporates by reference all paragraphs of this Complaint set out above as if fully set forth herein.

70. Defendants entered into an unlawful agreement to cause the presentation of false or fraudulent claims to the United States Government and performed acts in furtherance of this conspiracy.

71. By virtue of the false or fraudulent claims presented by Defendants, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act of an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation.

**PRAYER FOR RELIEF**

72. WHEREFORE, Relator prays that judgment be entered against Defendants, ordering that:

a. The Defendants cease and desist from violating the Federal False Claims Act;

b. The Defendants pay not less than $5,500.00 and not more than $11,000.00, as adjusted for inflation, for each violation of 31 U.S.C. § 3729 et seq., plus three times the amount of damages the United States has sustained because of Defendants' misconduct;

c. Relator be awarded the maximum Relator's share allowed pursuant to 31 U.S.C. § 3730(d);

d. Relator be awarded all costs of this action, including attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d).

e. Defendants be enjoined from concealing, removing, encumbering or disposing of assets which may be required to pay the damages, penalties, fines, and costs awarded by the Court;

f. The United States and Relator should be awarded such other relief as the Court deems just and proper.

[Intentionally Left Blank]

## JURY TRIAL

73. Pursuant to Rule 38 of the Fed. R. Civ. P., Relator demands a trial by jury.

Respectfully submitted,

/s/ Steve Sumner

Steve Sumner
Texas Bar No. 19508500
E-Mail: ssumner@sumnerschick.com
Justin Sumner
Texas Bar No. 24063022
E-Mail: jsumner@sumnerschick.com

Sumner Schick LLP
3811 Turtle Creek Blvd.
Suite 600
Dallas, Texas 75219
(214) 965-9229

ATTORNEYS FOR RELATOR